UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

JACQUES DORCELY,

                Plaintiff,

       -against-

WYANDANCH UNION FREE SCHOOL
DISTRICT; BOARD OF EDUCATION
WYANDANCH UNION FREE SCHOOL
DISTRICT; DR. SHERMAN ROBERTS,
In His Capacity as Interim  Superintendent
of Schools, WYANDANCH UNION FREE
SCHOOL DISTRICT, and Individually;
DR. FRANK SATCHEL, In His Capacity
as Superintendent of Schools and Individually;
SAMUEL BURNETT,  as Trustee and Individually;
JAMES CRAWFORD, as Trustee and
Individually; REV. HENRY BACON as
Trustee and Individually; DENISE
BAINES, as Trustee and Individually;
SHIRLEY BAKER, as Trustee and
Individually; SISTER SAKINAH
KAREEM, as Trustee and Individually;
BARRY WHITE, as Trustee and
Individually; REV. MICHAEL TALBERT,
As Trustee and Individually; NORINA GETER,
as Assistant Superintendent for Human
Resources, WYANDANCH UNION FREE
SCHOOL DISTRICT and Individually; DARLENE
WHITE,as Principal  Dr. Martin Luther
King Jr. Elementary School, WYANDANCH
UNION FREE SCHOOL DISTRICT and
Individually; GINA TALBERT, as Principal
Milton L. Olive School, WYANDANCH
UNION FREE SCHOOL DISTRICT
and Individually; LARRY J. McCORD,  as
Attorney for the WYANDANCH UNION
FREE SCHOOL DISTRICT and
Individually; WYANDANCH TEACHERS
ASSOCIATION; and PETER NOTO, as President
of the WYANDANCH TEACHERS ASSOCIATION
and Individually,

                Defendants.

**VERIFIED COMPLAINT AND
JURY DEMAND**



RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAR 20 2006 ★

LONG ISLAND OFFICE

CV 06 1265

HURLEY, J.

TOMLINSON, M

Plaintiff, by his attorney, HARRIET A. GILLIAM, as and for his complaint against the defendants, respectfully sets forth:

## I.

## JURISDICTION

1. Plaintiff brings this action under, and jurisdiction is conferred on this Court by virtue of, a violation of plaintiff's constitutional rights of equal protection and due process, in violation of the Fourteenth Amendment and pursuant to 42 U.S.C. 1983 ; and by virtue of a violation of Title VII of the Civil Rights Act as amended; and Title VI of the Civil Rights Act, 42 U.S.C. 2000d, all on account of his race, national origin and color and in retaliation for engaging in protected activity ; and in violation of the First Amendment to the United States Constitution and Section 1983..

Plaintiff further asserts a violation of his equal protection rights under the New York State Executive Law, based on race, national origin and in retaliation for engaging in protected activity .

2. This Court has jurisdiction pursuant to 28 U.S.C. 1331 and 1342 and the Fourteenth Amendment and First Amendment to the United States Constitution.

## II.

## JURISDICTIONAL PREREQUISITES

3.  Plaintiff filed a timely complaint with the New York State Division of Human Rights and the U.S. Equal Employment Opportunity Commission, alleging discrimination on the basis of his national origin and in retaliation for engaging in protected activity, all in violation of Title VII and the New York State Executive Law.  The EEOC issued a Notice of Right to Sue and this action is filed within 90 days of said notice.  A copy of the Notice is attached as "Exhibit A".

## III.

## PARTIES

4.  Plaintiff is an adult male, of Haitian national origin, residing in the Town of Riverhead, County of Suffolk, State of New York, which is within the territorial jurisdiction of this Court.

5.  Plaintiff was employed by the defendant Wyandanch Union Free School District as a school psychologist from September 2, 2003 until September 18, 2004, the date of his termination.  Plaintiff was a probationary employee under the provisions of the New York State Education Law and his probationary period was due to expire in September, 2005.

6.  Upon information and belief, the defendant Wyandanch Union Free School District, ("The District") is a public school district, organized and operating under the laws of New York State and the rules and regulations of the Commissioner of Education

2

for the State of New York, located in the State of New York, County of Suffolk, Town of Babylon, for the purpose of the administration of primary and secondary education to the public within its geographical boundaries.

7. Upon information and belief, the defendant Board of Education, Wyandanch Union Free School District, (hereinafter referred to as "The Board") is the governmental body operating a State educational system, the Wyandanch Union Free School District, and is responsible for setting the policy of the District, directing the actions of the Superintendent of Schools and for making all final decisions regarding personnel matters.

8. Upon information and belief, defendant Dr. Sherman Roberts was, at all times relevant herein, the Interim Superintendent of Schools for the defendant Wyandanch Union Free School District, and was responsible for the day to day administration of District policies, deployment and supervision of personnel employed by the school district, with authority to effectively recommend hiring and firing of district personnel, and was responsible for performing all duties of the Office of Superintendent of Schools as set forth in Section 1711 of the New York Education Law, the rules and regulations of the Commissioner of Education, policies of the Board of Education, and such other responsibilities as were assigned or required by the Board of Education, as directed by the Board of Education.

9. Upon information and belief, defendant Dr. Frank Satchel was, at all relevant times herein, the successor to defendant Roberts, appointed effective July 10, 2004 as Superintendent of Schools and continues to serve as the

3

Superintendent of Schools of the defendant Wyandanch Union Free School District, and is responsible for day to day administration of District policy and deployment and supervision of all personnel, with authority to effectively recommend hiring and firing of personnel, and is responsible for performing all the duties of the Office of Superintendent of Schools as set forth in Section 1711 of the New York Education Law, the rules and regulations of the Commissioner of Education, policies of the Board of Education, and such other responsibilities as assigned or required by the Board of Education, as directed by the Board of Education.

10. Upon information and belief, defendants Samuel Burnett, James Crawford, Rev. Henry Bacon, Denise Baines, Shirley Baker, Sister Sakinah Kareem, Barry White and Rev. Michael Talbert, at all times relevant herein were trustees of the Board of Education of the Wyandanch Union Free School District.

11. Upon information and belief, defendant Norina Geter, was at all times relevant herein the Assistant Superintendent for Human Resources in the Wyandanch Union Free School District and the custodian of the plaintiff's personnel file.

12. Upon information and belief, defendant Gina Talbert, was at all times relevant herein, the Principal of the Milton L. Olive Middle School in the Wyandanch Union Free School District, was plaintiff's building principal upon his hire in September 2, 2003 until his transfer on February 2, 2004, and is the wife of defendant Trustee, Rev. Michael Talbert.

13. Upon information and belief, defendant Darlene White was at all times relevant herein the building principal at the Dr. Martin Luther King, Jr. Elementary

4

School, in the Wyandanch Union Free School District and was plaintiff's building principal and immediate supervisor from February 2, 2004 until his termination on September 18, 2004.

14. Upon information and belief, defendant Larry J. McCord was an employee of the Wyandanch Union Free School District and its in- house legal counsel, at all times relevant herein.

15. Upon information and belief, defendant Wyandanch Teachers Association is the duly certified bargaining unit and representative of the teachers and non-supervisory professional staff employed by the Wyandanch Union Free School District, of which plaintiff was a dues paying member during his employment with the defendant school district.

16. Upon information and belief, defendant Peter Noto was at all times relevant herein president of the defendant Wyandanch Teachers' Association.

### IV.

### FACTUAL ALLEGATIONS

17. Plaintiff was hired by the defendant Board of Education, Wyandanch Union Free School District as a school psychologist, effective September 3, 2003, for a two year probationary period.

18. Upon information and belief, plaintiff was the only Haitian national school psychologist within the district at the time of his hire and throughout his employment with the district.

5

19. Plaintiff came to the District with six years experience as a tenured school psychologist within the New York City School System , working with emotionally challenged and learning disabled children from various ethnic and cultural backgrounds. Plaintiff also had tenure as a biology teacher and foreign language teacher, for over ten years.

20. Upon his hire with the District, plaintiff was assigned to the Milton L. Olive Middle School, where the building principal was defendant Gina Talbert.

21. Plaintiff's immediate supervisor was Vhonnye Singleton, from whom he received his day to day assignments as a school psychologist.

22 Plaintiff was praised by his supervisors Ms. Singleton and Ms. Rita Shea for his ability to effectively interact with students and to work effectively with teaching staff.

23. At no time during his employment at Milton L. Olive School was plaintiff ever issued a written reprimand or warning regarding his job performance or interaction with students and staff.

24. On or about September 18, 2003, plaintiff was accused of unprofessionalism by defendant Gina Talbert, with respect to his response to a situation involving a student who was having an emotional outburst in a classroom.

25. Contrary to defendant Gina Talbert's accusations, plaintiff had in fact responded properly to the situation and did have a successful follow through consultation with the child the following day, concerning which Mrs. Talbert applauded his actions.

26. Subsequently, Mrs. Talbert referred to the September 18, 2003 incident, as well as a situation involving another student on September 19, 2003 as the bases for her

6

false accusations against plaintiff that he had acted inappropriately.

27. On or about September 19, 2003, Mrs. Talbert interrupted plaintiff's testing of a student, began yelling at him in public, embarrassing him and making a scene and telling him that he did not know what he was doing and that he did not fit into the culture of the building.

28. Defendant Gina Talbert accused plaintiff of being insubordinate.

29. Plaintiff was in no way disrespectful to Gina Talbert during their meeting regarding her accusations against him. However, plaintiff did raise issues with Gina Talbert about the ineffective intervention measures that were in place in the building and how they were not designed to help students having emotional outbursts and ensure their protection and the protection of the other students and staff.

30. Without any further discussion of the incident, plaintiff was notified by telephone over the weekend of September 20, 2003, by defendant Roberts that he was being placed on administrative leave and was to remain at home.

31. By letter dated September 19, 2003, from defendant Roberts, that was hand delivered to plaintiff's home on September 20, 2003, ,plaintiff was reassigned to administrative leave at home, until further instruction from Robert's office.

32. In the September 19, 2003 letter from defendant Roberts, plaintiff was further told that he was not allowed on any school property of the Wyandanch Union Free School District and was prohibited by Roberts from having any kind of contact with administration or staff from the Milton L. Olive Middle School or a Wyandanch employee in general. Plaintiff was told that if he was found on school property, he would

7

be immediately arrested and terminated.

33. Defendant Roberts further directed plaintiff in his September 19, 2003 letter to not contact him, but to await his contact, as to the date and time that he would meet with all parties "concerned with this matter" and advised plaintiff to consider bringing legal counsel or union representation to this meeting.

34. At no time did defendant Roberts' September 19, 2003 letter identify for plaintiff the reason for him being placed on indefinite administrative leave at home.

35. On or about September 20, 2003, prior to plaintiff being apprised of the nature of the allegations against him, or having an opportunity to respond or meet with defendant Roberts, the defendant district, by and through its agents, cleaned out plaintiff's office at the Milton L. Olive Middle school, and caused a trespass to be committed on plaintiff's property by delivering his personal belongings from his desk, to his residence, without his permission, having cleaned out his office while he was still employed by the District..

36. Defendant District, by and through its agents and employees, committed this trespass, notwithstanding the fact that plaintiff was actually on administrative leave at the time and was awaiting a meeting with defendant Sherman Roberts, per Roberts' directive.

37. While still on administrative leave at home, and not having been contacted by defendant Roberts to attend a meeting, as per his September, 19, 2003 letter to plaintiff, plaintiff was notified by a certified letter from defendant Geter dated September 24, 2003 that a recommendation for plaintiff's termination would be presented to the Superintendent (defendant Roberts) and further recommended to the Board of Education,

8

to be effective October 30, 2003.

38. In response to the September 24, 2003 letter from defendant Geter, plaintiff requested a statement of reasons for the proposed termination and further requested a hearing before the Board of Education, as per the Wyandanch Teachers Association (WTA) collective bargaining agreement.

39. A memorandum was prepared by Gina Talbert setting forth what she asserted to be the reasons for recommending plaintiff's termination, relating back to the occurrences on September 18, and 19, 2003 at the Milton L. Olive Middle School.

40. Defendant Roberts' October 9, 2003 letter of reasons for plaintiff's termination mirrored the reasons set forth in defendant Gina Talbert's memo as being based on the plaintiff's failure to follow appropriate directions from the building principal; failure to involve himself professionally in a classroom incident that he witnessed; plaintiff's intimidating, threatening and inappropriate conduct towards school personnel; and plaintiff's failure to maintain effective, professional communication with the building principal ( Mrs. Talbert).

41. Plaintiff denied the allegations and responded to the statement of reasons as being totally subjective and so vague that he could not be adequately apprised of what incidents were being referenced, and amounting to malicious actions by defendant Gina Talbert to have him removed from the Milton L. Olive Middle School.

42. Plaintiff was afforded a hearing before the Board of Education on December 9, 2003. at which time plaintiff testified and a transcript was made of said hearing.

9

43. Plaintiff testified at the hearing that defendant Gina Talbert had acted in bad faith and that she had told him that she did not want him in her building because he did not fit in with the culture of the building. Plaintiff also demonstrated at the hearing that defendant Gina Talbert's accusations were completely false and made intentionally to have him fired.

44. Prior to the December 9, 2003 hearing, and prior to the Board taking any action on defendant Robert's recommendation to terminate plaintiff, plaintiff's personnel file already contained a notation that he was terminated as of October 30, 2003, as per defendant Geter's September 24, 2003 letter.

45. At a meeting held on January 21, 2004, a majority of the Board of Education voted not to terminate plaintiff, finding that there was no basis for his termination.

46. It was communicated to plaintiff by agents of the district that defendant Gina Talbert did not want plaintiff to return to Milton L. Olive Middle School, upon his reinstatement.   In a letter dated January 29, 2004 from defendant Roberts, it was confirmed to plaintiff that the Board of Education had voted not to terminate his employment. Roberts further notified plaintiff in this letter that, effective February 2, 2004, plaintiff was to resume his duties as a school psychologist, being assigned to the Dr. Martin L. King, Jr. Elementary School (MLK Wing Grades 3-5) and that he would be working under the direct supervision of the building principal, Ms. Darlene White.

47. A copy of defendant Roberts' January 29, 2004 letter was also provided to defendant Darlene White , Ms. Singleton, plaintiff's former supervisor, and defendant Noto, the union president, among others.

10

48. Plaintiff was not permitted to return to his former position at the Milton L. Olive Middle School, where he had already been replaced by a black American female, while he was on involuntary administrative leave.

49. From the time of his reassignment to the Dr. Martin Luther King, Jr. Elementary School, plaintiff was subjected to the following malicious, discriminatory and differential   treatment by the district defendants:

a) He was told by defendant Roberts to report directly to building principal, defendant Darlene White, instead of his department chair, as he had done in his assignment at the Milton L. Olive School;

b) There was no preparation made by defendant White for plaintiff's arrival in the building on February 2, 2004 in terms of orientation or assignments;

c) Plaintiff was placed in a situation that amounted to physical and social isolation, being prohibited from receiving assignments from his department head or attending any type of in service that was offered to the other school psychologist in the building;

d) Plaintiff was not given any type of orientation to the building in terms of its physical layout, as well as the policies, procedures and protocol, despite his numerous requests;

e) Plaintiff did not have an office upon his reassignment and eventually ended up being placed in the "decontamination room " within the nurse's office.

f) Plaintiff was not given the necessary resource and testing materials as he had

11

been provided in his previous assignment;

g) Plaintiff was not initially given a computer **as he** had been in the previous assignment, but had to wait to receive one from a board **member**;

h) Plaintiff was not given a formal, regular **assignment** in his discipline as a school psychologist, but was assigned to be a lunch room **monitor** and substitute classroom teacher, without any instructional materials or **lesson** plans;

i) Plaintiff was not given the appropriate number **nor** form of observations and evaluations by his immediate supervisor, defendant White, **so** as to apprise him of how defendant White viewed his performance;

j) Plaintiff was singled out and harassed by defendant White with unwarranted disciplinary actions and written reprimands that were placed **in** his personnel file dated March 31, and April 21, 2004, directing plaintiff to **document** his daily activities in 15 minute intervals; March 26,2004 accusing plaintiff of **failing** to cooperate to cover another teacher's class; April 28, 2004 directing plaintiff **to resubmit** a corrected schedule of his daily activities; April 29, 2004 accusing plaintiff of **failing** to participate in an emergency evacuation drill; and April 29, 2004 accusing **plaintiff** of disrespecting authority, being arrogant and interfering with other teachers **by** complaining about how students were being treated;

k) Plaintiff prepared written rebuttals to each **disciplinary** action, denying the allegations: Plaintiff requested of defendant Geter that all **of his** rebuttals be placed in his personnel file, but he was denied his right to have all his **rebuttals** placed in his personnel files;

12

l) Plaintiff was given an evaluation by defendant White that was based on false accusations and mischaracterizations of his conduct, only weeks befor recommendation that he be terminated;

m) Defendant White denied plaintiff his rights of due process with respect to his evaluation by failing to afford him a pre-evaluation discussion and a post-evaluation discussion. Defendant White also issued plaintiff performance ratings without any comments and without citing any examples as to the bases for her ranking of his performance.

50. By memo dated April 30, 2004 defendant White reported to defendant Roberts that plaintiff had inquired of her why she was writing him up every chance she got and that he accused her of putting these write ups in his personnel file.

51. On May 3, 2004, plaintiff sent a memo to defendant Roberts complaining that he was being harassed by having to document his time in 15 minute intervals; that he was being undermined by other teachers monitoring him at the direction of defendant White; and that he was being punished for having complained about the fact that children in the building could not read and that they did not have adequate instructional materials and resources to help them; that some students were being subjected to inappropriate disciplinary actions; and that the district was not responsive to the cultural and language barriers encountered by Haitian students in the District and was further subjecting Haitian children to differential treatment on account of their cultural and language differences.

52. Plaintiff was reprimanded by defendant White for having complained about

13

inappropriate use of force on children in the building by teachers and about the fact that there was a lack of sensitivity to the needs of Haitian children who were experiencing learning difficulties because of cultural and language barriers, and was essentially told to mind his own business.

53. On the same day that plaintiff had written a memo to defendant Roberts complaining about harassment, upon information and belief, defendant White in response wrote a memo to defendant Roberts calling for plaintiff's termination, accusing plaintiff of making unreasonable requests of her, failing to adhere to school procedures and policies, and not being a team player.

54. Defendant White's May 3, 2004 memo was placed in plaintiff's personnel file, although plaintiff was not copied on defendant White's May 3, 2004 memo to defendant Roberts calling for his termination.

55. Within a month of his complaint to defendants Roberts and White about the conditions students encountered at the Dr. Martin Luther King, Jr. school and the disparate treatment of Haitian students, defendant White issued plaintiff's one and only formal evaluation that was unjustly critical of his performance and interaction with students and staff, and that failed to provided any factual bases for White's conclusions.

56. Upon information and belief, the June, 2004 evaluation was the only formal evaluation of plaintiff conducted by defendant White.

57. On or about June 7, 2004 plaintiff was presented with the evaluation by defendant White's secretary, for his signature.

58. Defendant White never met with plaintiff concerning her evaluation of him.

14

and never provided him with any feedback concerning her evaluation of him.

59. Plaintiff signed the evaluation because he was under the impression that he was required to sign it, although he disagreed with defendant White's remarks and subsequently wrote a detailed rebuttal to each false or unsupported comment by White. .

60. Within less than two weeks from the time that defendant White conducted her one and only evaluation of plaintiff, plaintiff received a letter dated June 15, 2004, from defendant Geter, advising plaintiff that a recommendation for termination of his employment would be presented to the Superintendent and that his termination would be further recommended to the Board of Education.

61. Plaintiff made numerous complaints to defendant Noto , requesting that the union intervene with respect to the adverse employment conditions he had experienced at the Dr. Martin Luther King, Jr. Elementary School since his first day in the building and with respect to the unwarranted reprimands and harassment he was receiving ever since his reassignment to the Dr. Martin Luther King, Jr. Elementary School. Plaintiff also notified the defendant WTA of his requests to defendant Noto for assistance , which also failed to respond.

62  Neither Noto, nor the WTA took any action on plaintiff's behalf to advocate for his rights or to even question administration on the way plaintiff was being treated, while they had taken such action upon behalf of white employees.

63. On or about June 22, 2004 plaintiff requested of defendant Geter the opportunity to review his personnel file,

64. Plaintiff sought to review his personnel file in order to identify its contents,

15

following the notification from defendant Geter that he was being recommended for termination.

65. Defendant Geter did not honor plaintiff's request to review his personnel file at the time he initially made the request in June, 2004 and offered no valid explanation for her refusal to do so.

66. Plaintiff complained to defendant Noto, as WTA president, about defendant Geter's refusal to grant him access to his personnel file at the time the request was made in June, 2004, but Noto took no action.

67. Counsel for plaintiff intervened by contacting defendant McCord to request that arrangements be made for plaintiff to review his personnel file.

68. Defendant McCord failed to take any action to have defendant Geter afford plaintiff his right to see his personnel file, stating that it was not necessary for plaintiff to see his personnel file.

69. Without having the benefit of seeing what was in his personnel file, plaintiff nonetheless prepared a rebuttal dated June 24, 2004 to defendant White's evaluation in which he pointed out the procedural violations, lack of notice and due process and the lack of substantive basis or comments for White's rating of his performance.

70. Plaintiff, upon being notified of the impending recommendation for his termination, requested of defendant Roberts a statement of reasons for the recommendation and further requested a hearing before the Board of Education.

71. Defendant Roberts failed to provide plaintiff with a statement of reasons for

16

the recommendation, .

71. As a result of defendant Robert's failure to respond, counsel for plaintiff contacted defendant McCord on several occasions, requesting the statement of reasons for plaintiff's recommended termination.

72. Defendant McCord responded that plaintiff need not be provided a statement of reasons : Nor did plaintiff need to be afforded access to his personnel file, since the issue was one of plaintiff not getting along with his boss (defendant White) and that he could be terminated for that reason.

73. On or about August 5, 2004, plaintiff received a statement of reasons for his recommended termination from defendant Satchel, dated July 28, 2004.

74. At the time that defendant Satchel issued the statement of reasons, he had only been superintendent of schools for approximately three weeks and he had had no contact with, nor knowledge of plaintiff. Defendant Satchel's statement of reasons mirrored defendant White's conclusions in the June, 2004 evaluation of plaintiff.

75. Plaintiff had until August 11, 2004 to respond in writing to the Board concerning defendant Satchel's statement of reasons in support of his recommendation that plaintiff be terminated.

76. In an attempt to respond to defendant Satchel's statement, plaintiff renewed his request to defendant Geter to review his personnel file.

77. Counsel for plaintiff also renewed her requests to defendant McCord that plaintiff be entitled to review his personnel file, in preparation of his response to defendant Satchel's statement of reasons, that was to be submitted to the Board by

17

August 11, 2004.

78. There was no response from defendant Geter nor defendant McCord to honor plaintiff's request to review his personnel file prior to submitting his August 11, 2004 response to the Board.

79. On August 16, 2004, plaintiff was contacted by defendant Geter's office and told that he could review his personnel file on August 17, 2004, one day before his August 18, 2004 meeting with the Board of Education concerning his termination.

80. Upon reviewing his personnel file on August 17, 2004, for the first time since his request on or about June 22, 2004, and after he had been required to respond on August 11, 2004 to the statement of reasons for his termination, plaintiff saw a notation to defendant White to come up with reasons for his termination.

81. Upon reviewing his personnel file on August 17, 2004, for the first time since his request on or about June 22, 2004, and after he had been required to respond to the statement of reasons by August 11, 2004, plaintiff discovered for the first time that defendant White had prepared the May 3, 2004 memo to defendant Roberts calling for his termination and that it was in his personnel file.

82. Upon reviewing his personnel file on August 17, 2004, plaintiff discovered that some of the rebuttals he had prepared to defendant White's unwarranted reprimands had never been placed in his file, as he had requested.

83. Upon reviewing his personnel file on August 17, 2004 , plaintiff discovered that there were documents in his personnel file that should not have been there, to wit defendant McCord's billing statements in connection with reviewing plaintiff's matter

18

and that defendant McCord had reviewed his personnel file without his knowledge and had included notes in plaintiff's personnel file regarding his investigation of the District's charges against plaintiff.

84. The Board afforded plaintiff an opportunity to address it on August 18, 2005 once a quorum of the Board was present.

85. Plaintiff advised the Board of the pattern of harassment he had experienced beginning with defendant Gina Talbert, continuing with defendants Roberts ,White and Geter, McCord and culminating with defendant Satchel's unfounded recommendation to terminate his employment and how he had complained about the inappropriate treatment of students, about lack of reading resources and materials that impeded the children's ability to read, and about the differential treatment of Haitian students in the District. Plaintiff advised the Board that he believed he was being retaliated against based on the proximity of time between his complaints and the move to terminate him.

86. Unlike the first hearing that plaintiff had been afforded before the Board of Education on December 9, 2003. on this occasion, there was no formal hearing; no transcript of the proceedings; there were no questions from the members of the Board, who appeared to have already made up their minds to terminate plaintiff; and defendant McCord kept interrupting plaintiff and limiting his time to address the Board. Although not all Board members were present for the hearing, all Board members were present for the subsequent vote and voted unanimously during the meeting held that same evening, to terminate plaintiff's employment.

19

## FIRST CAUSE OF ACTION

87. Plaintiff realleges all of the allegations in each and every paragraph of this complaint as fully set forth herein.

88. Defendant Gina Talbert engaged in a pattern of discriminatory and differential treatment of plaintiff on account of his sex and national origin by mounting false accusations against him about his interactions with students and staff; falsely accusing him of misconduct and being insubordinate towards her; openly engaging in unwarranted criticism of plaintiff designed to embarrass and annoy him; subjecting plaintiff's work to more scrutiny than other similarly situated non-Haitian and female employees in the building; and stating to him that she wanted him out of her building and that he did not fit in with the culture of the building, all in violation of his equal protection rights, pursuant to Section 1983..

89. Defendant Gina Talbert generated false statements which were used as a basis for placing plaintiff on involuntary administrative leave, banning him from district property and which later became the basis for her recommendation that plaintiff be terminated. Plaintiff was replaced by a black American female, even while he was on involuntary administrative leave.

90. Defendant Gina Talbert violated plaintiff's rights of equal protection pursuant to 42 U.S.C. 1983 as exhibited by her malicious and bad faith acts towards plaintiff and her differential treatment of him on account of his sex and national origin.

91. As a result of defendant Gina Talbert's discriminatory acts, plaintiff has suffered physical pain and suffering, emotional harm, hurt, humiliation, damage to his

20

reputation and loss of enjoyment of life.

## SECOND CAUSE OF ACTION

92. Plaintiff realleges each and every allegation as fully set forth herein.

93. Defendant Gina Talbert, in retaliation for plaintiff having voiced concerns about the lack of sufficient resources and counseling services and appropriate intervention measures for students at the Milton L. Olive Middle School, mounted false accusations against plaintiff which became the basis for plaintiff being placed on administrative leave, banned from all district property and which led to the recommendation that his employment be terminated., all in violation of his First Amendment rights pursuant to Section 1983.

94. As a result of defendant Gina Talbert's actions, plaintiff suffered hurt, humiliation, damage to his reputation, mental anguish , physical pain and suffering and loss of enjoyment of life.

## THIRD CAUSE OF ACTION

95. Plaintiff realleges all of the allegations in each and every paragraph of this complaint, as fully set forth herein.

96. Defendant Roberts engaged in conduct that amounted to a violation of plaintiff's constitutional rights by denying him his First Amendment right of speech and association, by forbidding him to speak to anyone from the District, during the time he was place on involuntary administrative leave, and threatening his arrest, all in violation

21

of Section 1983 and the First Amendment.

97. Defendant Roberts engaged in conduct that amounted to a violation of plaintiff's First Amendment Rights of freedom of association, by denying him the right to be on District property for any reason whatsoever, all in violation of Section 1983 and the First Amendment. .

98. As a result of defendant Robert's actions, plaintiff suffered physical and emotional harm, hurt, humiliation, damage to his reputation and loss of enjoyment of life.

## FOURTH CAUSE OF ACTION

99. Plaintiff realleges the allegations in each and every paragraph of this complaint as fully set forth herein.

100. Defendant Roberts, through his decision to recommend plaintiff's termination to the Board  in 2003 engaged in a pattern and practice of discriminatory treatment, on account of plaintiff's national origin and gender, concurring with defendant Gina Talbert that plaintiff did not fit in with the culture of the Milton L. Olive Middle .School.

101. Defendant Roberts subsequently retaliated against plaintiff in the latter part of January, 2004,  for plaintiff having successfully challenged his recommendation that plaintiff be terminated, by reassigning plaintiff to the Dr. Martin Luther King, Jr. Elementary School, instead of reinstating him to his former position at the Milton L.

22

Olive School, where he was replaced by an African American female.

102. Defendant Roberts further retaliated against plaintiff following his reinstatement by the Board, by refusing to provide requested information to plaintiff's mortgage lender to verify his employment, causing **plaintiff** to loose several opportunities to refinance his home at a lower interest rate.

103. Defendant Roberts further retaliated against plaintiff by having him report directly to defendant Darlene White, the building principal at the Dr. Martin Luther King, Jr. Elementary School, for all of his daily assignments, instead of having him report to the department chairperson, as was the normal procedure, causing plaintiff to be subjected to harassment, excessive scrutiny and denying him regular assignments within his discipline as a school psychology, all in violation Section 1983.

104. As a result of defendant Roberts' actions, **pla**intiff was placed in a position where defendant Darlene White, conferred with him **about** the treatment of plaintiff and issued unwarranted disciplinary actions, that defendant Roberts used to recommend plaintiff's termination a second time to the Board of Education in June, 2004.

105. In a memo dated May 3, 2004, plaintiff complained to defendant Roberts about the unjust and unequal treatment of Haitian students and about inappropriate physical contact by teachers towards students.

106. Roberts never responded to plaintiff's complaints about the lack of educational resources for children in the Dr. Martin Luther King, Jr. Elementary School, the mistreatment of students and the differential treatment of Haitian students.

107. Shortly after plaintiff sent his memo to **defen**dant Roberts, he was advised

23

that Roberts was recommending his termination to the Board of Education.

108. In support of his arbitrary decision to recommend plaintiff's termination, defendant Roberts directed defendant White, after the fact, to develop reasons for the recommendation, all of which were unfounded.

109. Upon information and belief, defendant Roberts engaged in a pattern of discriminatory and retaliatory actions towards plaintiff on account of his national origin and on account of him having engaged in protected activity by complaining about district policies and actions that violated the rights of students and compromised their educational experience, all in violation of Section 1983.

110. As a result of the retaliatory actions taken by defendant Roberts, plaintiff suffered hurt, humiliation, damage to reputation, mental anguish and physical pain and suffering and loss of enjoyment of life.

## FIFTH CAUSE OF ACTION

111. Plaintiff realleges each and every allegations as fully set forth herein.

112. Defendant Darlene White, as building principal and plaintiff's immediate supervisor during his assignment at the Dr. Martin Luther King, Jr. Elementary School engaged in a series of acts that amounted to plaintiff being singled out and treated differently than similarly situated school psychologist in terms of work assignments, accommodations and office space, training, observations and evaluations, and unjust disciplinary actions, as a result of him having engaged in protected activity of challenging the prior disciplinary action and on account of his national origin, as follows:

a) plaintiff was denied an office in which to work and was eventually assigned to

24

a decontamination room in the nurse's office, which was unkempt and lacked adequate ventilation and lighting.

b) plaintiff was denied necessary resource materials and a computer, despite making numerous requests to defendant White for them;

c) plaintiff was not given any regular assignment within his discipline as a school psychology, but was instead assigned to be a lunch monitor and substitute teacher in which case he was not given lesson plans or instructional materials despite his numerous requests to White for them;

d) plaintiff was singled out and required by White to document his time in 15 minute intervals under situations where he had not been given formal assignments within his discipline, without any response from White when he questioned why he was being singled out.;

e) plaintiff was the subject of numerous false and unwarranted formal disciplinary actions by White, accusing him of insubordination, lack of professionalism;

f) defendant White caused unwarranted disciplinary actions to be placed in plaintiff's personnel file and further placed a memorandum of May 3, 2003 in his personnel file, unbeknownst to plaintiff, recommending his termination;

g) plaintiff was denied all of the required observations and evaluations and the evaluation that White did conduct was not factually correct and served as a basis for the recommendation of his termination;

113.  As a result of White's differential and discriminatory treatment of plaintiff, in retaliation for his protected activity and on account of his national origin, plaintiff

25

suffered physical pain and suffering, mental anguish, hurt, humiliation, damage to reputation and loss of enjoyment of life.

## SIXTH CAUSE OF ACTION

114. Plaintiff realleges the allegations in each and every paragraph of the complaint, as fully set forth herein.

115. In or about March, 2004 and continuing thereafter, plaintiff complained to defendant White on numerous occasions about the lack of sufficient instructional and resource materials for children in the building and about the fact that many children in the building could not read and nothing was being done to help them

116. In or about May, 2004, plaintiff also complained to defendant White about inappropriate disciplinary measures being used by teachers in the building that included keeping children locked in a closet all day and using inappropriate force.

117. Plaintiff also complained to defendant White about the lack of sensitivity to the Haitian student population in terms of the cultural and language barriers they were experiencing that made it difficult for them to assimilate into the academic and social setting of the school.

118. In addition to the verbal complaints, plaintiff also put his concerns in writing, in the form of a memorandum that he sent to defendant Roberts and defendant White.

119. Defendant White retaliated against plaintiff for bringing these serious social and educational issues to her attention, issuing him a formal written reprimand that was

26

placed in his personnel file, telling him in essence, to mind his own business.

120. Shortly after plaintiff complained and issued the memorandum, defendant White conducted her one and only formal evaluation of plaintiff, which was not according to contract procedures and which was replete with inaccurate statements upon which plaintiff's performance was erroneously assessed, that further served as the basis for White's recommendation that plaintiff be terminated.

121. Shortly after plaintiff complained about the educational and social conditions in the school, White issued a memorandum dated May 3, 2004 to defendant Roberts accusing plaintiff of attempting to undermine her, expressing her personal sentiment that she did not want to be around plaintiff and expressing her opinion that plaintiff was not a team player and that therefore he should be terminated.

122. White never shared her memo or its contents with plaintiff, although the memo was placed in plaintiff's filed unbeknownst to him.

123. As a result of White's recommendation, Roberts decided to recommend to the defendant Board of Education that plaintiff be terminated.

124. Based on White's false accusations and uncorroborated evaluation, a statement of reasons for plaintiff's termination was prepared and used by defendant Robert's successor, defendant Satchel, as the bases for plaintiff's recommended termination.

125. Defendant White retaliated against plaintiff for exercising his First Amendment Right and for engaging in protected activity, all in violation of the First

27

Amendment and Section 1983.

126. As a result of defendant White's retaliatory acts as set forth herein, plaintiff suffered physical pain and suffering, hurt, humiliation, mental anguish, damage to reputation and loss of enjoyment of life.

## SEVENTH CAUSE OF ACTION

127. Plaintiff realleges each and every allegation in the complaint as more fully set forth herein.

128. Defendant Geter as assistant superintendent for human resources was the custodian of plaintiff's personnel file.

129. Defendant Geter was responsible for notifying plaintiff anytime a document was to be placed in his personnel file, in order to afford him notice and the right to respond where appropriate. Whereas plaintiff rebutted all of defendant White's unfounded accusations against him and requested that they be placed in his personnel file, Geter failed to include all of plaintiff's rebuttals in his personnel file as requested.

130. With respect to the May 3, 2004 memorandum from defendant White to defendant Roberts, accusing plaintiff of undermining White and threatening her and further recommending plaintiff's termination, Geter caused this memorandum to be placed in plaintiff's personnel file without notifying him of the same, thereby denying him his due process right of notice and opportunity to respond.

131. Defendant Geter further denied plaintiff access to his personnel file upon

28

several requests to review it, beginning on or about June 22, 2004, until plaintiff's legal counsel had to intervene, although such requests are routinely honored within just a few days of the request being made..

132. Defendant Geter denied plaintiff access to his personnel file until August 17, 2004, the day before he was to appear before the Board of Education to defend against being terminated, at which point he discovered documents in his personnel file that were placed there without his notice.

133. Plaintiff also discovered that defendant McCord had placed the billing statement for his legal services in connection with plaintiff's matter in plaintiff's personnel file, as well as references to his investigation of the charges against plaintiff, which defendant Geter as custodian of the file should not have permitted to appear in the plaintiff's personnel file.

134. Plaintiff further discovered that some of his rebuttals to defendant White's unwarranted written disciplines were not placed in his personnel file, although he had made said request of defendant Geter.

135. Defendant Geter's actions were malicious and in bad faith, and amounted to a denial of plaintiff's dueprocess rights in violation of Section 1983, as he was not apprised of all documents that were placed in his personnel file, he was denied the opportunity to have access to and review his personnel file before the deadline of submitting his rebuttal to the charges to the Board on August 11, 2004, and plaintiff was further denied adequate notice of newly discovered accusations, in sufficient time to

29

effectively address the Board of Education the following day.

136. As a result of defendant Geter's actions, plaintiff suffered a deprivation of his due process rights, in violation of Section 1983, causing him physical pain and suffering, mental anguish, hurt, humiliation, damage to his reputation and loss of enjoyment of life.

## EIGHTH CAUSE OF ACTION

137. Plaintiff realleges each and every allegation in the paragraphs of this complaint, as fully set forth herein.

138. Defendant McCord as an employee and in-house counsel to defendant district and board took the following actions with malice and in bad faith against plaintiff that amounted to a denial of his due process rights in violation of Section 1983:

a) failed to respond to plaintiff's numerous request for a statement of reasons and for access to his personnel;

b) predetermined that plaintiff was going to be terminated because of his belief that defendant White did not get along with plaintiff; and

c) denied plaintiff the same procedural safeguard s as he had been afforded during the December 9, 2003 hearing before the Board of Education.

138. As a result of defendant McCord's actions, plaintiff was denied the opportunity to have a timely review of his personnel file and was denied an opportunity

30

to be apprised in a timely fashion of all the allegations against him.

139. As a result of defendant McCord's actions, plaintiff has suffered physical pain and suffering, emotional harm and mental anguish, hurt, humiliation and loss of enjoyment of life.

## NINTH CAUSE OF ACTION

140. Plaintiff realleges each and every allegation in this complaint as fully set forth herein.

141. Defendant Satchel, recommended to the Board of Education that plaintiff be terminated, although he had only been in his position for less than one month and he had never met plaintiff and had no direct knowledge of plaintiff's performance.

142. Defendant Satchel based his recommendation for plaintiff's termination on defendant White's false accusations, without verifying or conferring with plaintiff. Upon information and belief, plaintiff is the only school psychologist that defendant Satchel has recommended for termination since his appointment.

143. Upon information and belief, defendant Satchel acted in bad faith and in retaliation for plaintiff having engaged in protected activity of complaining about educational and social conditions in the Dr. Martin Luther King, Jr. Elementary School, all in violation of Section 1983.

144. As a result of defendant Satchel's actions, plaintiff has experienced a deprivation of his equal protection rights, resulting in physical pain and suffering, mental

31

anguish, hurt, humiliation, damage to reputation and loss of enjoyment of life.

## TENTH CAUSE OF ACTION

145. Plaintiff realleges each and every allegation in the paragraphs of this complaint as fully set forth herein.

146. Defendant Board of Education subjected plaintiff to discriminatory and differential treatment on account of his national origin and in retaliation for having engaged in protected activity all in violation of Title VII of the Civil Rights Act, as follows:

a) Following plaintiff's reinstatement in January, 2004, the Board of Education subsequently acted to terminate plaintiff on account of his national origin, Haitian, and in retaliation for having engaged in protected activities.

b) Defendant Board of Education 's decision to terminate plaintiff was arbitrary and capricious and in bad faith, after plaintiff had complained about the inability of children at the Dr. Martin Luther King, Jr. Elementary School to read and complained about a lack of sensitivity to the particular cultural and language challenges that Haitian children in the district were experiencing and that there were inappropriate disciplinary measures being taken against children at said elementary school.

147. Defendant Board of Education violated plaintiff's right under Title VII when he was terminated based on his national origin and in retaliation for having

32

complained about conditions at the school where he worked.

148. As a result of the defendant Board of Education's actions, plaintiff has suffered a loss of income and benefits, physical pain and suffering, mental anguish, hurt, humiliation, damage to reputation, and loss of enjoyment of life.

## ELEVENTH CAUSE OF ACTION

149. Plaintiff realleges all of the allegations in each and every paragraph of this complaint as fully set forth herein.

150. Defendant Board of Education engaged in a pattern of discrimination of plaintiff on account of his national origin, treating him differently from others similarly situated with respect to his terms and conditions of employment with respect to his assignments and access to necessary resources and supplies..

151. As a result of defendant Board's discriminatory actions, plaintiff was terminated in violation of his equal protection rights pursuant Section 1983.

152. As a result of defendants' discriminatory acts, plaintiff has suffered a loss of income, physical and emotional harm, hurt and humiliation , damage to his reputation and loss of enjoyment of life.

## TWELFTH CAUSE OF ACTION

153. Plaintiff realleges the allegations in each and every paragraph of the complaint as set forth herein.

154. Plaintiff has been subjected to intentional discrimination by the defendant

33

District, Board, defendant Gina Talbert, defendant Sherman Roberts, defendant Darlene
White, defendant Frank Satchel, defendants Michael Talbert with respect to activities for
which the district received federal funds, all in violation of Title VI., all on account of
plaintiff's national origin.

155.   As a result of defendants' discriminatory actions, plaintiff has suffered loss
of income, physical pain and suffering, emotional distress, mental anguish, hurt,
humiliation, damage to reputation and loss of enjoyment of life.

## THIRTEENTH CAUSE OF ACTION

156.   Plaintiff realleges each and every allegation in the paragraphs of this
complaint as fully set forth herein.

157.   Plaintiff engaged in protected speech when he complained to defendant
Board of Education about the lack of educational resources and instructional materials for
students, inability of children to read, inappropriate disciplinary actions exacted towards
students and a lack of sensitivity and responsiveness to the cultural and language
challenges encountered by Haitian students in the district, in June, 2004.

158.   Defendant Board refused to respond to or address plaintiff's concerns about
educational and social conditions in the district.

159.   Within one month of the plaintiff raising these concerns, the Board voted to
terminate his employment, notwithstanding the fact that all of the allegations in the

34

statement of reasons presented to Board had been proven false by the plaintiff.

160. Defendant Board's actions were in retaliation for plaintiff exercising his First Amendment right to raise issues of broad concern within the district.

161. As a result of the defendant Board's retaliatory actions, plaintiff suffered a loss of income, physical pain and suffering, emotional damage, mental anguish, hurt, humiliation, damage to reputation and loss of enjoyment of life.

## FOURTEENTH CAUSE OF ACTION

162. Plaintiff realleges each and every allegation of the paragraphs in the complaint as fully set forth herein.

163. Defendants Burnett, Crawford, Bacon, Baines, Baker, Kareem and White, were the trustees on the Board of Education who all voted at the August 18, 2004 Board meeting in favor of plaintiff being terminated , thereby causing his termination.

164. At the time that plaintiff appeared before the Board on August 18, 2004 to present his position as to why his proposed termination should not be approved, not all of the trustees were present to hear plaintiff's presentation.

165. Upon information and belief, the individual trustees Burnett, Crawford, Bacon, Baines, Baker, Kareem and White acted with malice and in bad faith, with the intent to continue to deny plaintiff his constitutional rights of equal protection, due process and freedom of expression, by acting arbitrarily, and capriciously in voting to

35

terminate plaintiff, all in violation of Title VI and Section 1983.

166. As a result of the individual trustees' actions plaintiff suffered physical pain and suffering, hurt, humiliation, mental anguish, damage to reputation and loss of enjoyment of life.

## FIFTHTEENTH CAUSE OF ACTION

167. Plaintiff realleges each and every allegation in the paragraphs of the complaint as set forth herein.

168. Defendant WTA, as plaintiff's duly certified representative engaged in a patter and practice of discriminatory treatment of plaintiff by treating him differently than similarly situated white members by failing to advise him of his rights and failure to challenge unwarranted disciplinary actions and working conditions on his behalf, despite his numerous request that the union intercede.

169. Defendant union violated plaintiff's equal protection rights, pursuant to Section 1983.

170. As a result of defendant union's actions, plaintiff suffered physical pain and suffering, mental anguish, emotional distress, hurt, humiliation, damage to reputation, and loss of enjoyment of life.

36

## SIXTEENTH CAUSE OF ACTION

171. Plaintiff realleges each and every allegation in the paragraphs of the complaint as set forth herein.

172. Defendant Noto, treated plaintiff differently than white employees by failing to advocate on his behalf and failing to respond to his many requests for assistance in countering the numerous unwarranted disciplinary measures and lack of observations and evaluations, on account of his race and national origin, all in violation of Section 1983.

173. Defendant Noto failed to file grievances on plaintiff's behalf with respect to the lack of observations and evaluations and the recommendation to terminate his employment, all on account of his race and national origin, in violation of Section 1983.

173. As a result of defendant Noto's discriminatory acts, plaintiff suffered physical pain and suffering, mental anguish, emotional damage, hurt, humiliation, damage to reputation and loss of enjoyment of life.

WHEREFORE, plaintiff seeks judgment as follows:

1. Against defendant district and board of education, jointly and severally in the amount of Ten Million Dollars compensatory damages;

2. Against defendant Gina Talbert in the amount of One million dollars compensatory damages and one million dollars punitive damages;

3. Against defendant Sherman Roberts in the amount of Five Million dollars for compensatory and Five Million dollars punitive damages;

37

4. Against defendant Darlene White in the amount of Five Million dollars for compensatory and Five Million punitive damages;

5. Against defendant Frank Satchel in the amount of Five Million dollars for compensatory and One Million Dollars in punitive damages;

6. Against defendant Norina Geter in the amount of One Million Dollars for compensatory and One Million Dollars in punitive damages;

7. Against defendant Larry McCord in the amount of One Million dollars for compensatory and One Million Dollars in punitive damages;

8. Against trustees Burnett, Crawford, Bacon, Baines, Baker, Kareem and White, jointly and severally in the amount of Five Million Dollars for compensatory damages and Five Million Dollars in punitive damages;

9. Against defendant WTA in the amount of One Million dollars for compensatory and One Million Dollars in punitive damages; and

10. Against defendant Noto in the amount of One Million dollars for compensatory and One Million Dollars in punitive damages ; and

11. Attorney's fees and costs of this action, and such other relief as the Court deems necessary.

38

Dated: Riverhead, New York
      March 17, 2006

HARRIET A. GILLIAM (HAG2333)
Attorney for Plaintiff
P.O. Box 1485
Riverhead, New York 11901
(631) 722-8074

39

5417

## **VERIFICATION**

STATE OF NEW YORK   )
                            ) ss.:
COUNTY OF SUFFOLK   )

      JACQUES DORCELY, being duly sworn, deposes and says:  he is the Plaintiff in the above entitled action ; that he has read the foregoing Complaint and demand for jury trial and knows the contents thereof; that the same are true to his knowledge ; except as to the matters therein stated to be alleged upon information and belief; and that as to those matters he believes them to be true.

JACQUES DORCELY

Sworn to before me this
/7ᵗʰday of March , 2006

Notary public

MARGARET A. GILLIGAN
Notary Public, State of New York
No. 02-GI4970028, Suffolk County
Commission Expires July 30, 20 2 6

EXHIBIT "A"

**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5055 5221

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

December 20, 2005

Mr. Jacques Dorcely
c/o Harriet A. Gilliam, Esquire
Attorney at Law
P.O. Box 1485
Riverhead, NY 11901

Re: EEOC Charge Against Wyandanch Union Free School Dist., et al.
     No. 16G200411057

Dear Mr. Dorcely:

Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since
the date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a civil
action under Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

Sincerely,

Wan J. Kim
Assistant Attorney General
Civil Rights Division

by  Karen J. Ferguson

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC
    Wyandanch Union Free School Dist., et al.