UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

JACQUES DORCELY,

                Plaintiff,                **MEMORANDUM AND ORDER**
    -v.-                                         06-CV-1265 (DRH) (AKT)

WYANDANCH UNION FREE SCHOOL
DISTRICT, et al.,

                Defendants.
_____

**APPEARANCES:**

**For the Plaintiff:**
**Harriet A. Gilliam, Esq.**
Post Office Box 1485
Riverhead, New York 11901

**For Defendants Wyandanch Union Free School District; Board of Education Wyandanch Union Free School District; Dr. Sherman Roberts; Dr. Frank Satchel; Samuel Burnett; James Crawford; Rev. Henry Bacon; Denise Baines; Shirley Baker; Sister Sakinah Kareem; Barry White; Rev. Michael Talbert; Norina Geter; Darlene White; Gina Talbert; Wyandanch Teachers Association; and Peter Noto:**
**Ahmuty, Demers & McManus**
750 Roanoke Avenue
Riverhead, New York 11901
By: Robert J. Hindman, Esq.

**Defendant Larry J. McCord, Pro Se**
1291 Straight Path
North Babylon, New York 11704

**HURLEY, District Judge:**

        Presently before the Court is the motion by Plaintiff Jacques Dorcely ("Plaintiff") for the entry of a default judgment against defendant Larry J. McCord ("McCord") pursuant to Federal Rule of Civil Procedure ("Rule") 55. For the reasons stated below, the motion is denied.

## BACKGROUND

Plaintiff initiated this employment discrimination and civil rights action on March 20, 2006. She alleges that McCord was an employee of defendant Wyandanch Union Free School District (the "School District" or the "District") and its in-house counsel at all times relevant to her claims. (Compl. ¶ 14.) The Complaint was served on McCord on June 20, 2006.

On June 19, 2006, the District filed an Answer on behalf of all defendants except McCord. By letter dated August 4, 2006, counsel for the School District advised McCord that he was not authorized to represent McCord in this action based on the insurance carrier's determination that McCord was not an employee of the School District as of the date of Plaintiff's claims. (Affidavit of Larry J. McCord, dated Aug. 28, 2006 ("McCord Aff."), Ex. E at 1.) He explained that the carrier's determination was based on its finding that McCord was on leave from his employee status with the District from July 1, 2004 through June 30, 2005. (*Id.*) Counsel further warned:

> I would strongly urge you to contact plaintiff's counsel if you have not already done so to obtain whatever extension of time you need to enter an appearance until you resolve your legal defense so as to avoid being in default.

(*Id.* at 2.) Despite counsel's admonition, McCord did not file an Answer.

On August 15, 2006, Plaintiff moved for the entry of a default judgment against McCord. The next day, the Clerk of the Court noted McCord's default.

Although no default judgment had yet been entered by this Court, on August 29, 2006, McCord filed an Order to Show Cause seeking to vacate default judgment. By Order dated August 30, 2006, the Court denied McCord's Order to Show Cause for failure to comply with the Court's Local Rules and ruled that it would construe McCord's application as an

opposition to Plaintiff's motion for a default judgment. Plaintiff submitted reply papers on September 11, 2006.

## DISCUSSION

### I. *Standard of Review*

"The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court," *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993), and "district courts regularly exercise their discretion to deny technically valid motions for default." *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 319 (2d Cir. 1986). In exercising this discretion, district courts consider three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Diakuhara*, 10 F.3d at 96. In addition, courts may consider other equitable factors, including whether "the entry of default would bring about a harsh or unfair result." *Id.* "Although the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment, because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Id.* (citation omitted). Finally, the Court is mindful that "defaults are generally disfavored and are reserved for rare occasions [and] when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.*

### II. *Application to the Present Case*

Applying these standards, the Court concludes that a default judgment should not be entered against McCord and that the Clerk's notation of default should be vacated. The Court

will review the three relevant factors seriatim.

    **A.**    *Willfulness*

The Second Circuit has instructed that in the context of a default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (citations omitted). "[T]he court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *Id.*

Here, McCord contends that he did not respond to the Complaint because it was his understanding that he would be represented by the School District's insurance carrier. He claims that although he took a leave of absence from his position as Attendance Teacher, his status as an employee remained intact because he continued be the District's in-house counsel. He explains:

> As an employee, it was my understanding that I would be represented by the district's insurance carrier, along with the other defendants named in plaintiff's action. Only recently was it made known to me that my interests were not being represented by the insurance carrier . . . . Hence, I inadvertently omitted to answer the complaint. It is my belief that as an employee of the [School District] and a union member, I am entitled to such representation.

(McCord Aff. ¶ 5.)

McCord's explanation, if it can be characterized as such, still does not address why no response to the Complaint was ever filed. The Complaint was served on McCord on June 20, 2006. On August 4, 2006, counsel for the School District explicitly advised McCord that the District's insurance carrier had not authorized his representation and that McCord should enter an appearance to avoid default. Thus, as of at least August 4, 2006, McCord was aware of

4

the fact that he was not being represented by the District and that no answer had been interposed on his behalf. Plaintiff moved for the entry of a default judgment on August 15, 2006.

McCord cannot credibly argue that he had a reasonable belief that the School District would answer on his behalf in the face of counsel's August 4th letter clearly indicating otherwise. Even assuming arguendo that he genuinely believed that he was entitled to District representation, the fact remains that a complaint had been filed against him and the rules of procedure applied. There was nothing to preclude McCord from requesting an extension of time to respond to the Complaint while he attempted to resolve his dispute with the School District and its carrier about his representation. He did not so. Given McCord's deliberate conduct in failing to respond to the Complaint, the Court finds that his default was willful, and not merely careless or negligent. Hence, the willfulness factor weighs in favor of granting default judgment.

**B.** *Meritorious Defense*

The second factor for the Court to consider is whether McCord has a meritorious defense. Evidence beyond "conclusory denials to support his defense" is required. *Diakuhara*, 10 F.3d at 98. "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.*

Plaintiff, an adult male of Haitian national origin, was employed by the District from September 2, 2003 until September 18, 2004, the date of his termination. (Compl. ¶¶ 4-5.) His Complaint asserts violations of the equal protection and due process clauses pursuant to 42 U.S.C. § 1983; violations of Titles VI and VII on account of his race, national origin, and color, and in retaliation for engaging in protected activity; and violations of the First Amendment

pursuant to 42 U.S.C. § 1983. With regard to McCord, Plaintiff alleges that McCord acted with malice and bad faith in a manner that amounted to a denial of Plaintiff's due process rights in violation of 42 U.S.C. § 1983 by: (1) failing to respond to Plaintiff's numerous requests for a "statement of reasons" regarding McCord's alleged recommendation that Plaintiff be terminated from his position and for access to his personnel file; (2) predetermining that Plaintiff was going to be terminated because of his belief that Plaintiff did not get along well with defendant Barry White; and (3) denying Plaintiff procedural safeguards during a hearing before the Board of Education. (Compl. ¶ 138.)

In his defense, McCord claims that: (1) he forwarded Plaintiff's request for his personnel file to the District's former Assistant Superintendent for Human Resources, explaining that the file was not in his custody, care or control (Answer ¶ 42); (2) he had no duty to provide Plaintiff with a statement of reasons as to why Plaintiff's termination was being sought and he forwarded Plaintiff's request to the proper party and in no way prevented Plaintiff from receiving such statement (*id.* §§ 46, 49-50); (3) as in-house counsel, he lacked the ability to hire or fire District employees and he did not recommend Plaintiff's termination (*id.* § 57); (4) as a probationary employee, and pursuant to New York Education Law § 3012, Plaintiff's position could be terminated on the recommendation of the Superintendent, by a majority vote of the Board of Education (*id.* §§ 47-48); and (5) he could not have denied Plaintiff any due process rights because, as a probationary employee, Plaintiff did not have a property interest in his position (*id.* § 52).

The facts alleged by McCord, if proven, would constitute meritorious defenses to Plaintiff's due process claim. In addition, should it be found that Plaintiff lacked a property

6

interest in his position with the District, his due process claims would necessarily fail.[1]

Accordingly, this factor weighs against the granting of Plaintiff's motion for a default judgment.

C. *Prejudice to the Plaintiff*

Plaintiff submits that he would suffer prejudice should the Court not enter default judgment against McCord because it would delay the "case moving forward as McCord has not appeared before the Court previously, has not made any automatic disclosure, has not appeared . . . at the initial conference and may raise objections to the discovery schedule imposed by the Court." (Pl.'s Mem. of Law in Response to McCord's Motion at 10-11.) Given the short amount of time which has transpired since the Clerk noted McCord's default, any delay to Plaintiff is minimal. In any event, it is well-established that delay alone is not a sufficient basis for establishing prejudice. *Diakuhara*, 10 F.3d at 98. Accordingly, this factor weighs against the granting of Plaintiff's motion for a default judgment

D. *Conclusion as to Factors*

After careful consideration of the relevant three factors, the Court concludes that entry of default judgment is not warranted in this case. Although the Court is dismayed, to say the least, that McCord, an attorney of considerable experience, failed to take any action on his behalf until Plaintiff moved for the entry of default, the presentation of a meritorious defense and

---

[1] Before considering whether due process is lacking in a particular case, be it procedural or substantive, a Court must first consider whether a plaintiff was deprived of a federally protectable property interest. *See Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Harlan Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001); *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999); *Walz v. Town of Smithtown*, 46 F.3d 162, 167-68 (2d Cir. 1995). It is only when such a right is established that the Court may turn to a discussion of whether there has been a deprivation of that right without due process. *See Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972).

the lack of prejudice to Plaintiff weigh heavily in McCord's favor.  Accordingly, in the exercise of my discretion, Plaintiff's motion for the entry of a default judgment is denied.

## III. *Plaintiff's Request for Attorneys' Fees and Costs*

In the last paragraph of Plaintiff's reply papers, he briefly requests that the Court grant him attorneys' fees and costs.  This application is denied, without prejudice to renew, in compliance with the Court's Individual Rules on motion practice.  Should Plaintiff wish to pursue the matter, he shall so advise the Court via letter.  Any such application shall include the legal basis for such an award, together with supporting detailed contemporaneous time records.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for the entry of a default judgment against McCord (docket # 20) is DENIED.  The Clerk of the Court is hereby directed to vacate the Clerk's notation of default.  The proposed Answer and Counterclaims, attached as Exhibit F to McCord's affidavit, are deemed timely filed as of the date of this decision.

**SO ORDERED.**

Dated:  Central Islip, N.Y.
February 7, 2007

/s/
Denis R. Hurley,
United States District Judge